**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CRISPIN R., Jr., a Minor, and CRISPIN R., Sr. and ESTER R., Individually and as Parents and Next Friends of CRISPIN R., | ) ) ) ) | |
| Plaintiffs | ) ) | Case No. 09-CV-3993 |
| v. | ) ) | Judge Robert M. Dow, Jr. |
| Board of Education of the City of Chicago, District 299, | ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Crispin R., Jr. and his parents, Crispin R., Sr. and Ester R., filed suit against Defendant Board of Education of the City of Chicago, District 299 ("the Board") pursuant to 20 U.S.C. § 1415(i)(3), seeking attorneys fees and costs incurred by Plaintiffs as a result of a due process hearing brought pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. Defendant Board of Education of the City of Chicago, District 299, has moved for summary judgment [12] on Plaintiffs' request for fees and costs. For the reasons set forth below, Defendant's motion [12] is granted in part and denied in part.

**I. Background**

At the time of his due process hearing, Crispin R., Jr. ("Crispin") was a fifteen-year-old who attended J. I. De La Cruz Middle School, a Chicago Public School in District 299. The Board is the relevant local education agency as defined in 20 U.S.C. § 1402(15). Crispin has been eligible for special education services, and has impairments that include disability, autism, memory deficits, processing disabilities, disabilities related to oral expression, ADHD, and

Oppositional Defiant Disorder.[1]  Chicago Public Schools ("CPS") conducted a triennial evaluation of Crispin during the 2007-08 school year. At that time, because CPS did not provide formal testing by a speech pathologist or an occupational therapist, a school psychologist administered cognitive and academic testing. In April 2008, an Individualized Education Program ("IEP") meeting was convened to consider the evaluation reports and prepare an IEP. Following the IEP meeting, Crispin's parents retained Michael O'Connor and Nelly Aguilar to represent them in securing special education services.

On November 21, 2008, Plaintiffs, through their two attorneys, submitted a written demand that the Board provide Crispin the following independent educational evaluations ("IEE"s): (1) psychiatric, (2) speech and language, (3) assistive technology, (4) psychological, and (5) occupational therapy. In response, the Board requested an impartial due process hearing pursuant to the IDEA to defend the appropriateness of the Board's evaluations. Plaintiffs responded, arguing that the evaluations the Board conducted were inadequate and requesting that the Board pay for the five IEEs set forth above.

Attorney Kristine Shrode represented the Board in the due process proceeding that forms the basis for the fees requested in this lawsuit. The Board contends that the parties engaged in settlement negotiations prior to the hearing in this matter, while Plaintiffs maintain that "the School District simply reversed it's [sic] position on the opening day of the hearing and agreed to pay for three of the five requested evaluations." Pl. Resp. to Def. SOF at 3. Regardless of the parties' characterizations of what transpired, on the morning of March 9, 2009, prior to the start of the due process hearing, the parties agreed that the Board would fund three independent educational evaluations for Crispin R.: psychiatric, speech/language, and assistive technology.

---

[1] Selective muteism was a previously diagnosed impairment for Crispin. However, at the hearing, all witnesses, including Plaintiffs' expert, agreed that Crispin's symptoms do not meet the criteria for that diagnosis.

Accordingly, the only issues that proceeded to hearing were (1) whether the Board had conducted an appropriate psychological evaluation of Crispin, and (2) whether the Board was required to pay for an occupational therapy IEE for Crispin.

The due process hearing on the two remaining issues was conducted on March 9 and March 12, 2009. During the hearing, the hearing officer heard testimony from the school psychologist, two classroom teachers, and a private psychologist, Dr. Manghi, presented by Plaintiffs. On April 6, 2009, the hearing officer issued a decision. In the hearing officer's decision, he noted that the parties "settled their dispute over multiple aspects of the evaluation." He further explained that "the District has agreed to pay for: (1) psychiatric evaluations; (2) speech and language evaluations; and (3) assistive technology evaluations * * * * As such, the only remaining issues are whether the psychological evaluation conducted by the District is appropriate and whether the District was required to conduct an occupational therapy evaluation in order to properly evaluate [Crispin]." The hearing officer found that the Board appropriately conducted the psychological evaluation of Crispin and that the Board need not take any further action in that regard.[2] The hearing officer also found that "the District failed to appropriately evaluate [Crispin] by failing to conduct an occupational therapy evaluation" and ordered the Board to pay for an IEE in that area. In the decision, the hearing officer devoted three and a half pages to evidence elicited at the hearing related to the psychological evaluation and four paragraphs to the occupational therapy evaluation. The hearing officer made nine legal findings related to the appropriateness of the Board's psychological evaluation and one finding regarding

---

[2] The approximate cost of a psychological IEE for Crispin R. would have been $4,000.

the occupational therapy evaluation. The Board then paid for Crispin's occupational therapy IEE, which cost $1,725.00.[3]

After the Decision was issued, on May 8, 2009, Plaintiffs' counsel submitted a claim for attorney fees and costs in the amount of $35,609.35. Upon receipt of the claim, Defendant objected, and Plaintiff proposed a certain adjustments, including a twenty-percent reduction, bringing the amount in dispute to $28,258.48. Defendant still objected, and this lawsuit ensued.

## II.  Legal Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

---

[3] On two other discrete issues that Plaintiffs raised during the hearing, the hearing officer ruled as follows: (1) English is Crispin R.'s "dominant language at school"; therefore, because Crispin R. "was fluent in English * * * this would not affect the evaluation," and (2) "[t]he [Board] properly determined that [Crispin] did not have Selective Mutism."

4

trial." *Id*. at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

## III. Analysis

The Individuals with Disabilities Education Act ("IDEA") contains a fee-shifting provision whereby "the court, *in its discretion*, *may* award reasonable attorney's fees as part of the costs to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B) (emphasis added). This Court has jurisdiction to adjudicate the fee petition based on 20 U.S.C. § 1415(i)(3)(A). Federal courts have jurisdiction over independent attorneys' fees suits resulting from an IDEA administrative proceeding. *Bd. of Educ. Of Oak Park v. Nathan R.*, 199 F.3d 377, 380-81 (7th Cir. 2000); *John M. v. Board of Educ. of City of Chicago, Dist. 299*, 612 F. Supp. 2d 981, 990 (N.D. Ill. 2009)

### A. Prevailing Party

To determine whether Plaintiffs are entitled to attorneys' fees, the Court must first ask whether they prevailed. "The term 'prevailing party' under 20 U.S.C. § 1415(e)(4)(b) has the same meaning as the phrase does in 42 U.S.C. § 1988." *Bd. of Educ. of Oak Park v. Nathan R.*, 199 F.3d 377, 382 (7th Cir. 2000); see also *Jodlowski v. Valley View Cmty. Unit Sch. Dist.*, 109 F.3d 1250, 1253 n. 2 (7th Cir. 1997) ("[C]ases dealing with 42 U.S.C. § 1988, which provides for attorney's fees for prevailing parties in civil rights cases * * * nevertheless guide our interpretation of the meaning of 'prevailing party' under the IDEA"). In order to qualify as a "prevailing party" for purposes of the IDEA, a party must obtain "actual relief on the merits of a

claim that materially alters the legal relationship between the parties * * * in a way that directly benefits [that party]." *Linda T. v. Rice Lake Area Sch. Dist.,* 417 F.3d 704, 707-08 (7th Cir. 2005) (internal citations omitted); see also *Farrar v. Hobby,* 506 U.S. 103, 111-12, 113 (1992); *T.D. v. LaGrange School Dist. No. 102,* 349 F.3d 469, 479 (7th Cir. 2003) (under the IDEA, plaintiffs may be considered prevailing parties if "they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.").

In *Buckhannon Board and Care Home, Inc., v. West Va. Dept. of Health and Human Resources*, the Supreme Court held that a party cannot be a prevailing party without a court ordered change of the defendant's behavior, rejecting the "catalyst" theory as a basis for recovery of attorneys' fees.[4] 532 U.S. 598, 610 (2001). Where a party files a suit or takes other action that is a catalyst for a voluntary change by the opposing party, the party is not a prevailing party even though its actions achieved their purpose. *Id.* at 605. "A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Id.* Thus, judgments on the merits and court-ordered consent decrees are the primary basis for prevailing party status. *Id.* at 604. The Seventh Circuit has applied the holding in *Buckhannon* to IDEA cases since 2003. See *Bingham v. New Berlin Sch. Dist.*, 550 F.3d 601, 602-03 (7th Cir. 2008); *T.D. v. LaGrange School Dist. No. 102*, 349 F.3d 469, 478 (7th Cir. 2003) (noting that Supreme Court in

---

[4] *Buckhannon* arose after an operator of assisted living homes failed a state fire inspection because its residents were not capable of "self preservation." *Id.* at 600. The operator received cease and desist orders, then subsequently filed suit in the district court. *Id.* at 600-01. The suit alleged that the "self preservation" requirement violated the Fair Housing Amendments Act and the Americans with Disabilities Act. *Id.* at 601. Some time after the suit was filed, the state legislature eliminated the requirement from the statute and the case was dismissed as moot. *Id.* The plaintiff sought attorneys' fees under the catalyst theory which indicates that "a plaintiff is a prevailing party if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Id.* (internal quotation omitted).

*Buckhannon* "left the clear impression that private settlements do not involve sufficient judicial sanction to confer "prevailing party" status).

Here, although the Board contests that Plaintiffs are prevailing parties,[5] the hearing officer's decision provided Plaintiffs with substantial relief when it found for Plaintiffs on one of the two claims at issue during the hearing. The hearing officer determined that "the District failed to appropriately evaluate Student by failing to conduct an occupational therapy evaluation. We therefore order the District to pay for an independent educational evaluation in the area of occupational therapy." That result changed the legal relationship of the parties in a way that benefited Plaintiffs. See *Buckhannon,* 532 U.S. at 604-05; see also *Evanston Community School Dist. No. 65 v. Michael M*, 356 F.3d 798 at 805 (7th Cir. 2004) (finding that a party prevailed after obtaining thirty minutes per week additional occupational therapy services and noting, "[a]fter all, the prevailing party inquiry does not turn on the magnitude of the relief obtained."). Therefore, Plaintiffs qualify as prevailing parties under the IDEA. See *Linda T.,* 417 F.3d at 707-08; *Moriarty v. Svec*, 233 F.3d 955, 966 (7th Cir. 2000) (reading *Farrar v. Hobby*, 506 U.S. 103, 112 (1992), as "holding that a plaintiff who wins any measure of damages is a prevailing party for the purposes of fee-shifting statutes."); *Johnson v. Daley*, 339 F.3d 582, 587 (7th Cir. 2003) (en banc) ("[a] plaintiff achieves 'prevailing party' status by recovering *any* judgment, even for

---

[5] In its opening brief, the Board argued that Plaintiffs should not be considered prevailing parties because they lost on the "main issue," which the Board contends was the issue of whether further action was needed with respect to the psychological evaluation. But see *Koswenda v. Flossmoor School Dist. No. 161*, 227 F.Supp.2d 979, 986 (N.D. Ill. 2002) (noting that "a party need not prevail on the primary issue in the litigation to recover attorneys' fees but must at a minimum be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant). However, in its reply brief, the Board conceded: "Defendant does not dispute that plaintiffs may recover reasonable fees for work performed on the issue upon which plaintiffs prevailed at the hearing (occupational therapy evaluation), including fees for work performed prior to the hearing." Based on this representation, it appears that the Board has conceded that Plaintiffs are prevailing parties on at least one claim. In any event, the Court will briefly address the issue.

7

nominal damages"); see also *Ryan M. v. Board of Educ. of City of Chicago, Dist. 299*, 2010 WL 3184209, at *7 (N.D. Ill. Aug. 9, 2010).

**B.     Reasonableness of Fees**

Having rejected Defendant's threshold contention that no fee at all is appropriate in this case because Plaintiffs did not "prevail," the Court now turns to the analysis of determining a reasonable fee. See *Anderson v. AB Painting & Sandblasting, Inc.*, 578 F.3d 542, 546 (7th Cir. 2009) ("If a party prevails, and the damages are not nominal, then Congress has already determined that the claim was worth bringing" and the Court then "must limit itself to determining whether the hours spent were a reasonable means to that necessary end"). As the Seventh Circuit recently reiterated, "[a]lthough there is no precise formula for determining a reasonable fee, the district court generally begins by calculating the lodestar – the attorney's reasonable hourly rate multiplied by the number of hours reasonably expended." *Schlacher*, 574 F.3d at 856 (citing *Hensley*, 461 U.S. at 433-37). Before examining the hours and rates in this case, however, the Court notes a few basic principles that apply in generating the lodestar in a fee-shifting case.

First, it is appropriate to consider the litigation as a whole, rather than viewing the specific claims atomistically, if "the plaintiff's claims of relief * * * involve a common core of facts or [are] based on related legal theories," such that "much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988). Second, a fee award "should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435; see also *Dunning v. Simmons Airlines, Inc.*, 62 F.3d 863, 873 (7th Cir. 1995). As the court of appeals has summarized, "*Hensley* makes clear that

8

when claims are interrelated, as is often the case in civil rights litigation, time spent pursuant to an unsuccessful claim may be compensable if it also contributed to the success of other claims." *Jaffee v. Redmond*, 142 F.3d 409, 413 (7th Cir. 1998). And finally, the fact that the amount yielded by computing the "lodestar" exceeds the amount of the judgment does not necessarily indicate that the prevailing party has made an unreasonable fee request. In the Seventh Circuit's words, "[b]ecause Congress wants even small violations of certain laws to be checked through private litigation and because litigation is expensive, it is no surprise that the cost to pursue a contested claim will often exceed the amount in controversy." *Anderson*, 578 F.3d at 545.

Here, the Board does not dispute that the hourly rates charged by Plaintiffs' attorneys are reasonable based on the background and experience of attorneys O'Connor and Aguilar.[6] Instead, the Board uses the total amount requested as the starting point and then challenges certain fee petition entries as non-recoverable. For present purposes, the total amount requested is $35,232.10.[7] The Court now addresses each of the Board's objections in turn.

---

[6] Michael O'Connor charged a rate of $350 per hour prior to January 1, 2009, and $380 per hour from January 1, 2009 forward. Nelly Aguilar charged $185 per hour at all times. Plaintiffs' counsel have filed affidavits averring that their rates are within community standards. In addition, courts in this district have accepted the hourly rates charged by Plaintiffs' counsel in prior fee cases litigated against Defendant. See *John M.*, 612 F. Supp. 2d at 997; *Benito M. v. Board of Educ. of City of Chicago, Dist. 299*, 544 F. Supp. 2d 713, 720 (N.D. Ill. 2008).

[7] Although Plaintiffs' attorneys submitted a demand for fees and expenses in this matter that totaled $35,609.35, in the prayer for relief in the complaint, Plaintiffs reduced the amount that they request in fees from $35,609.35 to $35,323.10, based on "no charge" adjustments made pursuant to a July 1, 2008 letter. Plaintiffs later applied a 20% reduction to the $35,323.10 adjusted fees and expenses reflected in the billing statements. However, because (1) Plaintiffs applied the 20% reduction to the final dollar figure demanded and (2) Defendant asserts that if fees and expenses are warranted at all, a reduction of greater than 20% is appropriate, the Court will use the total sum before the 20% adjustment ($35,323.10) as the starting point for the determination of whether the attorneys' fees and expenses sought in this case are reasonable.

*1.      Unfavorable Results*

Any identifiable time that Plaintiffs' attorneys spent solely on issues upon which Plaintiffs did not prevail is not compensable. *Bryant v. City of Chicago*, 200 F.3d 1092, 1101 (7th Cir. 2000). Accordingly, the court will not award plaintiffs for the following fees and expenses.

**a.      Psychological evaluation**

As noted above, Plaintiffs did not prevail on their claim for an independent educational evaluation of Crispin R. in the area of a psychological assessment. Plaintiffs' expert in this area was Dr. Manghi, a psychologist. Accordingly, plaintiffs should not be compensated for the time that their attorneys spent related to Dr. Manghi or litigating the psychological evaluation issue. Deductions will be made as follows: (1) Attorney O'Connor spent 3.40 hours at $380 per hour, thus the Court will deduct $1,292.00 from the total amount; and (2) Attorney Aguilar[8] spent 2.50 hours at $185 per hour, thus the Court will deduct $462.50. The total deduction for time spent on litigating the psychological evaluation issue is $1,754.50.

**b.      Experts**

Plaintiffs did not present any expert witnesses in support of their demand for an occupational therapy evaluation and only presented one expert (Dr. Manghi) in support of the psychological evaluation demand (the issue that they lost). Plaintiffs' attorneys seek to recoup fees for preparing other experts, such as Dr. Martinez, who never testified. Accordingly, Plaintiffs' attorneys have not shown how the time spent with the experts contributed to their success. Thus, they are not entitled to compensation for time spent on matters related to experts,

---

[8] To calculate Attorney Nelly Aguilar's time, the Court used (1) the revised billing statement attached to the complaint as Exhibit D and (2) the revised billing statement attached to Plaintiffs' statements of material facts as Exhibit B (which reflects the same number of hours as the exhibit attached to the complaint, but with more detail for specific entries).

and the Court will deduct $692.50 (.35 hours x $350 plus 1.50 x $380[9]) for the time Attorney O'Connor spent on this issue and $878.75 (4.75 x $185) for the time Attorney Aguilar spent. The Court also will deduct the $91.00 related to expert expenses that Plaintiffs seek to recoup. The total deduction for non-compensable time spent on experts is $1,662.25.

### c. Selective mutism and bilingual evaluation requirements

Plaintiffs' attorneys' bills include time spent on researching "selective mutism." The hearing officer specifically stated in the Decision that "[t]he [Board] properly determined that Student did not have Selective Mutism." Additionally, the hearing officer found that English is Crispin R.'s "dominant language at school," and because Crispin R. "was fluent in English * * * this would not affect the evaluation." Therefore, the Court declines to award Plaintiffs' entries related to the issue of selective mutism and deducts $950.00 (2.50 hours x $380) for the time that Attorney O'Connor spent on this issue and $185.00 (1.00 x $185) for the time that Attorney Aguilar spent. The total deduction for time spent on litigating these issues is $1,135.00.

### 2. *Vague and duplicative items*

Defendant contends that certain entries are too vague to merit an award of attorneys' fees, and that other entries are duplicative. A court should not award attorneys' fees to a party for time entries that are so vague that it is impossible to discern whether the time is excessive or even relevant to the claim on which the plaintiff prevailed. See *Cooper v. Verifications, Inc.*, 2008 WL 5332190, *12 (N.D. Ind. Dec. 18, 2008) ("'Where a court finds hours to be insufficiently documented, it may disallow those hours or reduce the entire fee award by a proportionate amount.'") (quoting *Delgado v. Vill. of Rosemont*, 2006 WL 3147695, at *2 (N.D. Ill. Oct. 31, 2006)); *Mehringer v. Village of Bloomingdale*, 2003 WL 21506856, *11 (N.D. Ill. Jun. 27, 2003). The standard for evaluating the amount of itemization and detail in time entries

---

[9] On January 1, 2009, Michael O'Connor's billing rate increased from $350 to $380 per hour.

in a fee petition, to the extent that there can be said to be one, appears to be based on the market – that is, "the level of detail paying clients find satisfactory." *Garcia v. City of Chicago*, 2003 WL 22175620, at *3 (N.D. Ill. Sept. 19, 2003). In addition, the time entries must be sufficiently detailed to permit the Court to determine whether the hours expended were reasonable and necessary to the conduct of the litigation.

Here, while the time entries of Attorney Aguilar that were attached to Plaintiffs' complaint were not detailed, the Court finds that the revised time entries (attached to Plaintiffs' statement of material facts) are not outside the boundaries of what paying clients would accept, nor are they so cryptic as to preclude reasonable analysis. As Judge Zagel has written, in words that apply equally here, "there is no binding standard on how hours should be described and how great the detail should be. If, on the face of it, the hours seem out of line, there is some weight to a claim that descriptions are too sparse, but the hours are not out of line here." *Kunz v. City of Chicago*, No. 01 C 1753, Memorandum Opinion and Order, at 3 (N.D. Ill. Aug. 14, 2008). However, the Court agrees with Defendant that certain entries are duplicative (and notes that Plaintiffs have not responded to this objection and demonstrated that these entries are not duplicative). See *Schlacher v. Law Offices of Phillip J. Rotche & Assoc., P.C.*, 574 F.3d 852, 858 (7th Cir. 2009) (encouraging courts to "scrutinize fee petitions for duplicative billing when multiple lawyers seek fees" and to disallow this time). Thus, the court will deduct $977.00 from the total amount, which reflects the duplicative entries in Attorney O'Connor's bill (as set forth in Appendix 1 to Defendant's memorandum) when compared to entries on the same dates from Attorney Aguilar's billing statement.

### 3. Fee Petition

Plaintiffs seek to recover for the time spent on the fee petition. "Ample case law supports the proposition that when a prevailing party is forced to litigate to obtain a fee award, a component of that award may include a reasonable fee for the time expended in preparing and litigating the fee petition." *Trs. of the Chicago Plastering Inst. Pension Trust v. Cork Plastering, Inc.*, 2008 WL 728897, at *6 (N.D. Ill. Mar. 18, 2008); see also *Catalan v. RBC Mortg. Co.*, 2009 WL 2986122, at *11 (N.D. Ill. Sept. 16, 2009). The Court has reviewed the documentation submitted by Plaintiffs in support of their request for fees related to the fee petition. The Court finds that the time expended in preparing and litigating the fee petition was reasonably spent and will include that time in the fee award.

### 4. "Block-billed" time

After deducting for the above categories of time, the Court must determine whether the remaining entries are reasonable. The descriptions for the time entries that remain represent time the attorneys described sufficiently such that the entries are not vague. However, Defendant objects to the lack of detail in the time entries submitted by Plaintiffs' counsel, characterizing those entries as "block billing" and complaining that entries made in such fashion render any assessment of the reasonableness of the time spent on specific tasks extremely difficult, if not impossible.[10] Indeed, these entries by and large indicate time spent both on issues on which plaintiffs prevailed and on issues on which they did not prevail, or time spent on generic issues related to the hearing (*e.g.*, "research caselaw; compile relevant cases for use at hearing" and "review school records received from CPS").

---

[10] The Seventh Circuit has stated that "although 'block billing' does not provide the best possible description of attorneys' fees, it is not a prohibited practice." *Farfaras v. Citizens Bank & Trust Co.*, 433 F.3d 558, 569 (7th Cir. 2006).

The "Supreme Court has said that 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Linda T.,* 417 F.3d at 708 (quoting *Hensley,* 461 U.S. at 436); see *Anderson*, 2009 WL 2525571, at *2 ("If a party prevails, and the damages are not nominal, then Congress has already determined that the claim was worth bringing" and the Court then "must limit itself to determining whether the hours spent were a reasonable means to that necessary end"); see also *Jodlowski v. Valley View Community Unit Sch. Dist. No. 365-U*, 109 F.3d 1250, 1255 (7th Cir. 1997). As the Supreme Court has observed, when litigation of a fee-shifting case leads to "excellent results" for the prevailing party, the plaintiff's attorney "should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435. In the Supreme Court's view, "[n]ormally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Id*. By contrast, where it cannot be said that the results obtained were "excellent," the lodestar figure remains the point of initial departure, but the "district court may then adjust that figure to reflect various factors including the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Schlacher*, 574 F.3d at 856-57; see also *Estate of Enoch*, 570 F.3d at 823-24 ("The lodestar figure is the 'starting point,'" but other factors that properly may bear on the calculus include "whether, in addition to the claims on which plaintiffs prevailed, there are other claims on which they did not prevail," as well as the overall "results obtained in the litigation"); *Connolly v. Nat'l Sch. Bus. Svc., Inc.*, 177 F.3d 593, 597 (7th Cir. 1999) (noting that the court has used a three-part test "in determining the degree of success a plaintiff has obtained": (i) the difference between the actual judgment and the recovery sought, (ii) the significance of the legal issues on which the plaintiff prevailed, and (iii)

the public interest at stake in the litigation).  And of these factors, "success is the most significant * * * for a judge to consider in deciding what is a reasonable fee."  *Connolly*, 177 F.3d at 597.

Where a party obtains a result that is substantially less than its demand and/or the fees that it requests in compensation, a "reasonable" fee may be less than the full lodestar amount. "Once the district court reaches an amount using the lodestar determination, it may then adjust that award in light of the plaintiff's 'level of success.'"  *Spegon*, 175 F.3d at 557; see also *Shea v. Galaxie Lumber & Constr. Co.*, 152 F.3d 729, 736 (7th Cir. 1998) ("district courts both can and should look to the degree of success a party achieves in deciding how generous a fee award should be").

As Judge Shadur observed, the Seventh Circuit has upheld on many occasions "a reduction of the award without parsing the specific hours to be eliminated" where such a reduction is warranted in light of the relevant circumstances, including the limited success achieved at trial.  *Tauber v. City of Chicago*, 33 F. Supp. 2d 699, 701 (N.D. Ill. 1999) (citing cases).  In *Tauber*, for example, Judge Shadur reduced the requested fee award by 40%, taking into account the positive ("the great value of counsel's services in having obtained substantial success in the face of a war of attrition that very probably would have defeated less dedicated adversaries") and the negative ("the substantial degree of [Plaintiff's] lack of success on her total claims (even though those claims were not frivolous as such)").  *Id*. at 702-03.  Similarly, in *Cooke v. Stefani Mgmt. Svcs., Inc.*, 250 F.3d 564, 570 (7th Cir. 2001), the Seventh Circuit ruled that "the district court's 50 percent limited-success reduction [was] entirely justified" where the plaintiff requested nearly $300,000 from the jury, but recovered only $7,500.  As the court noted, because the award to the plaintiff was "hardly an overwhelming success" in a "simple case with no broad social impact," counsel should have been "happy to receive fees of nearly seven times

the amount of their client's recovery." *Id.*; See also *Spegon*, 175 F.3d at 558-59 (affirming reduction of lodestar by 50% in light of limited success); *Garcia v. Oasis Legal Fin. Oper. Co.*, 608 F. Supp. 2d 975, 980 (N.D. Ill. 2009) (reducing lodestar amount by 50% because the degree of success obtained by plaintiff, "while not entirely insignificant, is partial at best"); *Sottoriva*, 2009 WL 211170, at *4 (reducing lodestar by 67% "to reflect Plaintiff's limited degree of success"); *Cannella v. Anodyne Corp.*, 1997 WL 573398, at *2-*3 (N.D. Ill. Sept. 11, 1997) (reducing lodestar by additional 35% after initial item-specific reductions).

The Court finds this case to be much like *Tauber*, at least in the sense that determining an appropriate fee reduction based on "overall success" requires a balance of positive and negative considerations. On the one hand, Plaintiffs did prevail on one of the two counts on which they went to a hearing. They also settled, in their favor, three additional claims on the morning of the hearing. Thus, Plaintiffs achieved four out of the five things they set out to do. On the other hand, the monetary value of the occupational therapy IEE that they were awarded was minimal – $1,725 compared with $4,000 that they were not awarded for a psychological IEE.

Thus, on balance, the Court determines that a reduction in the lodestar on "proportionality" grounds is appropriate in light of the less than complete success that Plaintiffs achieved in this case. In view of the foregoing analysis, and bearing in mind that the degree of success obtained is the most important factor in determining a reasonable fee, the Court concludes that a 30% reduction in the block-billed time is appropriate. Thus, after the Court makes the specific deductions noted above – which reflect (i) time clearly spent on claims that settled or on which Plaintiff lost as well as (ii) duplicative entries – the Court determines that the rest of the time is compensable at 70%. The Court arrives at this number by giving Plaintiffs 50% for the "win" at the hearing (as they won on one out of two claims) and another 20% for

time spent on the "big picture" of the case and on matters that, although not neatly and directly attributable to the winning claim, surely helped in obtaining the favorable result.

**III.     Conclusion**

For the reasons set forth in this opinion, the Court grants in part and denies in part Defendant's motion for summary judgment [12]. The Court finds that Plaintiffs are prevailing parties and that they are entitled to reasonable attorneys' fees and costs; however, the Court also finds that a reduction in the amount of fees requested is appropriate, based both on the specific deductions set forth in the opinion as well as a reduction of 30% of the remaining fees after the deductions are taken. Taking these factors into consideration, Plaintiffs are awarded attorneys' fees and costs in the amount of $20,856.05. The Clerk of the Court shall enter judgment in favor of Plaintiffs and against Defendant in the amount of $20,856.05 for attorneys' fees and costs.

Dated: September 10, 2010         _____
                                  Robert M. Dow, Jr.
                                  United States District Judge